UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

SHIRLEY C.,[1]                                                    Case No. 1:20-cv-01212-MK

            Plaintiff,                                            **OPINION
AND ORDER**

    v.

COMMISSIONER, Social Security
Administration,

            Defendant.
_____

**Kasubhai,** United States Magistrate Judge:

       Plaintiff Shirley C. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have

consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 4. For

the reasons that follow, the Commissioner's final decision is REVERSED and this case is

REMANDED for an immediate calculation and payment of benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB in November 2017 with an alleged onset date of January 1, 2017.[2] Tr. 13; 65; 152–53. The Commissioner denied Plaintiff's application initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 13; 93–103. Plaintiff appeared and testified at a hearing held on July 12, 2019. Tr. 13; 26–62. On August 13, 2019, an ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 13–20. The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 60 years old at the alleged onset date. Tr. 64. Plaintiff graduated high school and has past relevant work as a billing clerk and insurance clerk. Tr. 186; 20. Plaintiff alleges disability based on reflex sympathetic dystrophy ("RSD") of the left foot, fibromyalgia, back pain, and diverticulosis. Tr. 65; 152–53.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's]

---

[2] "Tr." citations are to the Administrative Record. ECF No. 9.

conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations her impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act, but found that she engaged in substantial gainful activity during the period between March 2017 and June 2017. Tr. 15. The ALJ additionally found, however, that there was a continuous 12-month period in which Plaintiff did not engage in substantial gainful activity, and the remainder of the decision addressed that period. Tr. 16. At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia syndrome; and degenerative disc disease. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a Listed impairment. *Id.* Before proceeding to the fourth

step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). The ALJ found that Plaintiff had the RFC to perform a full range of sedentary work, with the following exertional limitations: "the individual can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The individual can occasionally balance, stoop, kneel, crouch, and crawl." Tr. 17. At step four, the ALJ determined that Plaintiff could perform past relevant work as a billing clerk and insurance clerk. Tr. 20. The ALJ thus found that Plaintiff was not disabled within the meaning of the Act. *Id.*

## DISCUSSION

Plaintiff asserts that remand is warranted because the ALJ: (1) erroneously rejected Plaintiff's subjective symptom testimony; (2) failed to identify legally sufficient reasons to reject lay witness statements; and (3) improperly weighed the medical opinion evidence. The Court addresses each argument in turn.

## I. Subjective Symptom Testimony

Plaintiff argues the ALJ rejected her symptom testimony for reasons that were neither specific, clear nor convincing. Pl.'s Br. 6–13, ECF No. 13. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude

that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that, while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "allegations as to the intensity of symptoms are not entirely consistent with or supported by the record." Tr. 18.

The Court must next assess whether the evidence the ALJ relied upon suffices as clear and convincing reasons to reject Plaintiff's subjective complaints. The Commissioner asserts the ALJ supplied four valid rationales that undermined Plaintiff's subjective complaints: (A) a lack

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

of objective evidence; (B) her treatment history; (C) a lack of support from examination reports; and (D) her activities of daily living.

## A.    Lack of Objective Evidence

The Commissioner asserts the medical evidence did not support Plaintiff's claimed limitations. Def.'s Br. 4–5, ECF No. 14. In relation to Plaintiff's fibromyalgia, the ALJ discounted Plaintiff's testimony because the "medical record contain[ed] no evidence that medical doctors have excluded other impairments, such as rheumatologic disorders, myofascial pain syndrome, polymyalgia, or chronic Lyme disease, as required in SSR 12-2p." Tr. 18.

However, SSR 12-2p does not require that medical providers exclude other impairments to establish that a claimant's fibromyalgia limits their ability to function.[4] The specific portion of the ruling that contains language relating to the exclusion of other symptoms instructs adjudicators on "[w]hat specific criteria" may be used to establish that a claimant's fibromyalgia is medically determinable impairment based on the American College of Rheumatology's 1990 fibromyalgia classification guidelines. SSR 12-2p, *available at* 2012 WL 3104869, at *2–3. Significantly, the ruling contains an entirely separate section, not referenced by the ALJ, explaining how adjudicators should evaluate a claimant's "statements about his or her symptoms and functional limitations." *Id.* at *5. In other words, the portion of the ruling referenced by the ALJ is not relevant to an adjudicator's evaluation of a claimant's subjective symptom testimony. As such, the fact that no medical provider had excluded other impairments was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

---

[4] The Ninth Circuit described the Commissioner's implementation of SSR 12-2p as a "sea-change" in that the "ruling recognizing fibromyalgia as a valid basis for a finding of disability." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).

Furthermore, although an ALJ may consider the lack of objective evidence in some circumstances, it may not be the sole basis for rejecting a claimant's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.") (internal quotation marks and brackets omitted).

Here, the ALJ cited examinations during which

> objective support for the claimant's impairments indicates that they are mild and would not cause the alleged severity of symptoms. Imaging notes that the claimant's degenerative disc disease is "mild" and the claimant's symptoms were noted to be "out of proportion" to the degree of compression present in progress notes[]. The EMG performed was normal[].

Tr. 18 (citing Tr. 391–93, 721, 728, 736, 753) (internal citations omitted). Thus, the ALJ's rejection of Plaintiff's subjective symptom testimony based on a lack of objective medical evidence was improper. As such, the objective medical record was also not a clear and convincing rationale to reject Plaintiff's subjective symptom testimony.

## B. Treatment History

The Commissioner asserts the ALJ properly rejected Plaintiff's testimony based on treatment that produced good results. Def.'s Br. 5. While an ALJ may reject symptom testimony that is unsupported by persuasive reports of treatment providers, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004), an ALJ may not cherry-pick isolated instances of improved functioning. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ must consider Plaintiff's subjective testimony in light of the record as a whole. *Id.* Furthermore, the Ninth Circuit has held that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances

of improvement over a period of months or years and to treat them as a basis for concluding a

claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Here the ALJ noted that Plaintiff's medical records indicate:

> [C]laimant's treatment has been producing good results. After the claimant's most
> recent lumbar decompression surgery, she reported that there was "significant
> improvement" in her radiating pain and that she was "very pleased"[]. The claimant
> further reported that her injections would relieve the pain by up to 80%[]. Also, one
> of the claimant's providers in early 2019 noted that her current treatment regime
> was providing sufficient relief and functional gain[].

Tr. 18–19 (citing Tr. 455, 425, 441, 447) (internal citations omitted). The ALJ cites a treatment

note one month after Plaintiff's right-sided L4-5 lateral recess decompression citing Plaintiff's

acknowledgment of "significant improvement" and that she was "very pleased." Tr. 18–19.

However, the full progress note indicates Plaintiff "is very happy to report a significant

improvement in her radiating right LS pattern pain. She admits she still has chronic back pain,

hip pain and RSD pain in her left leg but she is very pleased Dr. Walker was able to get rid of

some of her pain." Tr. 455. Furthermore, the progress note indicates Plaintiff's "active problem

list" includes: chronic low back pain; chronic pain disorder; complex regional pain syndrome;

other specified disorders of shoulder joint; and lumbar spondylosis with myelopathy. *Id.* The

ALJ also cites a treatment note where Plaintiff "reported that her injections would relieve the

pain by up to 80%." Tr. 19. Again, the ALJ misrepresents the treatment note which reads

Plaintiff "was pleased report a 75-80 percent improvement in her overall pains, in particular her

radiating right leg pain, for about 12-24 hours after the injection. Her pain then recurred to

previous levels." Tr. 425. The note further states:

> Since that time she feels her pain has further worsened. She rates her pain today at
> a 6-7/10 on a VAS. She continues to complain of a mixed pain of right lateral hip
> and deep groin pain with hip flexion and then chronic low back pain with worsened
> buttock and right leg pain that radiates in a classic L5 distribution reaching the
> dorsum of her foot and her great toe. She denies foot or toe weakness. She states

the pain is so severe she's had to quit her job and is no longer able to work or to walk more than very short distances.

*Id.* The ALJ further notes one of Plaintiff's providers in early 2019 noted that her current treatment regime was providing sufficient relief and functional gain. Tr. 19. However, review of the notes referenced by the ALJ indicate Plaintiff "received almost 3 hours of complete pain relief from the procedure." Tr. 437. That note further states:

> She has chronic pain at the base of her lumbar spine with radiation through both lower extremities. She has mild paresthesias in the lower extremities but no weakness. She denies any bowel or bladder dysfunction. She has constant pain that is typically 7/10 on the VAS scale and is stinging, sharp and aching. Pain medication provides some moderate reduction in pain and make some modest improvement in her ability to function and enjoy her activities of daily living.

*Id.* The other note the ALJ referenced included a physical musculoskeletal exam that indicated Plaintiff's lumbar back "exhibits decreased range of motion, tenderness and pain." Tr. 446.

> She has constant pain throughout her lower spinal column with radiation through both lower extremities. She denies paresthesia, weakness, and she does not have any bladder or bowel dysfunction. She has constant pain, typically 6/10 on the VAS scale. It is stabbing, sharp and aching. Her pain is made worse by any activity, particularly any weightbearing and is improved by heat, rest and medication. Her pain medication provides· a 40% reduction in pain and a 50% improvement in her ability to function without any adverse effects.

Tr. 443. Accordingly, when viewed in the context of the record as whole, Plaintiff's limited reports of short-lived improvements were not clear and convincing reasons for the wholesale rejection of Plaintiff's subjective symptom testimony. Thus, Plaintiff's treatment history was not a clear and convincing reason to reject her testimony.

## C.  Examination Reports from Treating Providers

The Commissioner also argues the ALJ properly rejected Plaintiff's testimony based on examinations that show Plaintiff's physical abilities remain largely intact. Def.'s Br. 5. Specifically, the ALJ states the "examinations show that the claimant's physical abilities remain largely intact. On examination, the claimant usually shows almost full and/or full strength, normal muscle tone and

bulk, normal coordination, full sensation, and a normal gait, before the recent hip fracture[]." Tr. 19 (citing Tr. 282, 291, 293, 299, 328–29, 331, 338, 343, 347, 355, 358, 361, 372, 374, 383, 386, 397, 405, 411, 417, 427–28, 432, 440, 446, 455, 458, 507, 514, 560, 566, 570, 583, 593, 614, 618, 701, 715, 760). However, the ALJ fails to address other evidence from Plaintiff's examinations that show Plaintiff had positive FADIR test on the left and straight leg test on the left, tenderness to palpation over the left greater trochanter and left sacroiliac joint, antalgic and slow gait, slow transitions from sitting to standing, use of a cane to ambulate, inability to heel or toe walk, reduced ability to squat, diffuse weakness throughout the left lower extremity, pain with ankle dorsiflexion, positive fibromyalgia tender points, decreased range of motion and tenderness of the lumbar spine, abnormal muscle tone, decreased strength in the bilateral lower extremities, tenderness to palpation of the bilateral SI joint, positive FABER test, altered sensation with mild allodynia over the left lateral foot, severe pain with minimal rotation of the right hip, and increased groin pain with hip flexion and crossing of the right leg. Tr. 299, 282–83, 293, 291, 363, 372, 397, 401, 417, 427–28, 446. Moreover, the above objective findings were documented in examinations performed prior to Plaintiff's May 2019 lumbar decompression surgery.

The ALJ must consider Plaintiff's subjective testimony in light of the record as a whole; an ALJ may not cherry-pick isolated instances from the record. *Ghanim*, 763 F.3d at 1164; *Garrison*, 759 F.3d at 1017. Here, the record demonstrates that Plaintiff's examinations exhibited symptoms consistent with her subjective symptom testimony. Accordingly, when viewed in the context of the record as whole, the ALJ improperly used Plaintiff's examination reports from treating providers to reject Plaintiff's subjective symptom testimony. Thus, the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

**D.      Activities of Daily Living**

Finally, the Commissioner contends the ALJ properly rejected Plaintiff's testimony based upon her activities of daily living. Def.'s Br. 5–6. Activities of daily living can form the basis for an ALJ to reject a claimant's testimony in two ways:  (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

The ALJ cited Plaintiff's ability to make meals, take care of a cat, do some laundry, wash dishes, take out the trash, dust, clean floors, drive, and shop. Tr. 19. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject a claimant's subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ failed to articulate how those limited activities in any way conflicted with Plaintiff's testimony. *See Smolen*, 80 F.3d at 1284 (explaining that to properly discredit a claimant on the basis that her activities contradict her testimony, the "ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion");

*see also Dodrill*, 12 F.3d at 918. As this Court recently observed, an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Jessica E. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00224-MK, 2020 WL 2083963, at *6 (D. Or. Apr. 30, 2020) (citation omitted). Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony.

In sum, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II.     Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of the lay witness statements. Pl.'s Br. 18–19. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where an ALJ has provided clear and convincing reasons for rejecting a claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, an ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The record contains three lay witness statements submitted by Plaintiff's partner, Tim C., friend of twelve years, Kristina N., and friend of thirty-five years, Pam Z. Tr. 262 (Tim C.); 263–65 (Kristina N.); 266–67 (Pam Z.). The ALJ failed to explicitly reject the lay witness statements.

The Commissioner asserts "the inconsistencies noted by the ALJ [regarding Plaintiff's subjective symptom testimony] stand as sufficient germane reasons to disregard the lay witness statements." Def.'s Br. 7. However, as discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints. Therefore, the ALJ failed to supply a germane reason to reject the lay witness statements. Accordingly, the ALJ's failure to explicitly reject the remaining portions of lay witness statements was error.

### III.    Medical Evidence

Plaintiff contends the ALJ improperly assessed Nurse Lohrfink's medical opinion. Pl.'s Br. 14–17. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence applies. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168818, 82 Fed. Reg. 5844, at *5867-68 (Jan. 18, 2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at * 6 (D. Or. Oct. 28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the

"more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers relationship with the claimant; however, they are not required to do so. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

Given the Social Security Act's broad grant of authority to the agency to adopt rules regarding "proofs and evidence," prior caselaw must yield to the Commissioner's new, permissible regulations to the extent those cases interpreted the former regulations. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) ("The Act authorizes the Secretary to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases." (citing 42 U.S.C. § 405(a)); *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (holding that courts should grant *Chevron* deference to regulatory changes that conflict with prior judicial precedent, unless a court's prior construction followed from the unambiguous terms of the statute and thus left no room for agency discretion); *Emilie K. v. Saul*, 2021 WL 864869, at *4 (E.D. Wash. Mar. 8, 2021) (collecting cases and observing "[m]ost District Courts to have addressed this issue have concluded that the regulations displace Ninth Circuit precedent").

The Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for discounting a medical opinion. *See Robert S.*, 2021 WL

1214518, at *4 (D. Or. Mar. 3, 2021) (collecting cases). The new regulations do not, however, displace the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for this Court to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.    Katherine Lohrfink, FNP.

Nurse Lohrfink began treating Plaintiff in January 2016 and examined her four times. Tr.

420. The ALJ cites Lohrfink's report stating:

> The opinion from treatment provider Katherine Lohrfink, FNP, found that the claimant can be active for only 30 minutes before needing to lie down for 1-2 hours Lohrfink also found that the claimant could walk 1 block, sit 15 minutes at one time, and stand/walk 20 minutes at one time[]. However, Lohrfink further found that the claimant needs to change positions, needs to elevate her legs, needs breaks every 30-40 minutes, would be off-task 25% or more of the time, and would miss more than 4 days of work in a month[]. In another statement, Lohrfink found that the claimant could not sit for 2 hours and/or stand for 2 hours in an 8-hour day, that the claimant would need to walk around frequently but could not be active for long, that pain would often interfere with the claimant's attention/concentration, and that the claimant would be incapable of even "low stress" jobs[]. Lohrfink also found the claimant would need extra breaks hourly, could frequently lift less than 10 pounds and occasionally lift up to 20 pounds, would have significant limitations on doing repetitive reaching, handling, and fingering, and would be absent from work about 5 days per month[].

Tr. 19 (citing Tr. 420–24, 449–54) (internal citations omitted). The ALJ concluded the opinion of

Nurser Lohrfink was "not persuasive as they are not consistent with or supported by the record as

a whole. The claimant's positive responses to treatment, her usually normal gait, and her daily

activities are all in contradiction with these findings." Tr. 19 (citing Tr. 282, 291, 293, 299, 328-

29, 331, 338, 343, 347, 355, 358, 361, 372, 374, 383, 386, 397, 405, 411, 417, 427–28, 432, 440,

446, 455, 458, 507, 514, 560, 566, 570, 583, 593, 614, 618, 701, 715, 760).

As discussed above regarding the ALJ's improper discounting of Plaintiff's subjective

symptom testimony, the ALJ improperly relied on isolated instances of improvement in

Plaintiff's treatment history to discount Plaintiff's subjective symptom testimony. Therefore, the

ALJ's conclusion that Nurse Lohrfink's opinion was inconsistent with positive responses to

treatment is not supported by clear and convincing evidence. Additionally, the ALJ's conclusion

that Nurse Lohrfink's opinion was inconsistent with Plaintiff's "usually normal gait" is also not

supported by clear and convincing evidence. As previously discussed, the ALJ improperly used

Plaintiff's examination reports from treating providers, including those discussing her gait, to

discount Plaintiff's subjective symptom testimony. With respect to the ALJ's conclusion that

Nurse Lohrfink's opinion is inconsistent with Plaintiff's activities of daily living, this conclusion

is also not supported by clear and convincing evidence. The discussion above demonstrates that

the ALJ failed to articulate how Plaintiff's limited activities in any way conflict with Plaintiff's

testimony by providing only a mere recitation of Plaintiff's activities. Therefore, the ALJ

committed harmful error by discounting Nurse Lohrfink's opinion.

## IV. Remand

A reviewing court has discretion to remand an action for further proceedings or for a

finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th

Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings

depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179

(9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the

"three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court

considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting

evidence; (2) the record has been fully developed and further proceedings would serve no useful

purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407

(9th Cir. 2015). Even if all of the requisites are met, however, the court may still remand for

further proceedings "when the record as a whole creates serious doubt as to whether the claimant

is, in fact, disabled[.]" *Id*. at 1021. "Serious doubt" can arise when there are "inconsistencies

between the claimant's testimony and the medical evidence," or if the Commissioner "has

pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted)).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, the lay witness statements, and the medical opinion evidence.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). In *Treichler*, the court relied on "significant factual conflicts in the record between [the claimant's] testimony and objective medical evidence" to conclude remanding for further proceedings was the appropriate remedy. *Id.* at 1105. Specifically, the claimant testified that he would lose control of his bladder during the day, though treatment notes indicated the issue occurred only at night. *Id.* He also testified that he experienced fecal incontinence, but the single medical report discussing the issue stated that the claimant complained of constipation and denied problems with fecal incontinence. *Id.* The claimant further testified that he had debilitating pain twice a week, though he reported to a physician that his pain medication made life tolerable and testified that medication alleviated a lot of the pain. *Id.* Based on these significant conflicts, the court concluded that a remand for further proceedings was the appropriate remedy. *Id.* at 1107.

Here, by contrast, the medical evidence of record is consistent with Plaintiff's testimony. *See* Tr. 282, 291, 293, 299, 328–29, 331, 338, 343, 347, 355, 358, 361, 372, 374, 383, 386, 397,

405, 411, 417, 427–28, 432, 440, 443, 446, 455, 458, 507, 514, 560, 566, 570, 583, 593, 614, 618, 701, 715, 760. The Commissioner asserts that remand is required to resolve evidentiary conflicts in the record. Def.'s Br. 12–13. Specifically, the Commissioner asserts that Plaintiff had greater functioning than alleged and the medical evidence did not support greater limitations. *Id.* The Court finds any purported conflicts not significant. *Treichler* compels remanding for further proceedings only where there are *significant* factual conflicts between the claimant's testimony and the objective medical evidence. *Treichler*, 775 F.3d at 1105. The Court finds those purported conflicts immaterial because they have no bearing on the Court's crediting-as-true the erroneously rejected medical evidence. Accordingly, the Court finds the record has been fully developed and further proceedings would serve no useful purpose.

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Crediting the limitations contained in Nurse Lohrfink's opinion as true compels a finding of disability based on the vocational expert ("VE") testimony. *Compare* Tr. 420–24, 449–54 (Nurse Lohrfink opining that Plaintiff can be "active for only 30 minutes before needing to lie down for 1-2 hours," Plaintiff can walk one block, sit fifteen minutes at one time, and stand/walk twenty minutes at one time, Plaintiff needs to change positions, needs to elevate her legs, needs breaks every thirty to forty minutes, would be off-task 25% or more of the time, and would miss more than four days of work in a month.), *with* Tr. 54–58 (VE testifying that an individual who regularly took thirty minute breaks every two hours "would take them off task outside the acceptable amount" and would not be able to keep their job.); *Trevizo*, 871 F.3d at 683 (crediting the claimant's testimony and medical opinions as true combined with VE testimony established disability, making remand for immediate payment of benefits appropriate).

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). Considering the record as a whole, the Court concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *See id.* at 1021; *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit as true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). Moreover, the Commissioner has not "pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether Plaintiff is disabled under the Act. *Dominguez*, 808 F.3d at 407. As such, the Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 15th day of July 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge